Good morning. My name is Craig Unrath. I represent the defendant, Dr. Gina Dietrich. This is a case of first impression under Illinois law. Until now, no court in Illinois has ever allowed a new trial on the jury verdict in the absence of a post-trial motion. This case is a little bit different, though. It takes it one step further. Not only was there a failure to file a post-trial motion or a decision not to file that motion, but plaintiff also expressly abandoned the issue in the first page of their appellate brief. They stated that this case is not about the jury's verdict. Now, to date, plaintiff has never asserted any claim of error with the jury's verdict. They've never claimed it was against the manifest way of the evidence. They've never identified any evidentiary rulings that were made in error. Now, they claim now, in the second appeal, that the evidence of pre-delivery conduct and the actual delivery of the child is so intertwined that a new trial on all issues is necessary to resolve the case. This was never raised in the trial court and it was never raised in the first appeal. Now, let's talk, Mr. Unrath, about that first appeal. How do we get to the issue that even you're talking about here? Isn't the only issue before this court and the meaning of the appellate court's mandate in CRIM 1? Aren't we being asked, after the appellate court is asked, what did you mean in your opinion on that first appeal? And now we get this case, for whatever reason, asking us to decide whether their answer to that is correct. So how do we get to doing exactly what you want us to do? And that is to say, I guess you're saying there's been jurisdictional problems with respect to the whole new trial idea. Yes, Your Honor. I believe there is a jurisdictional problem here, a plain jurisdictional problem, because when the court ordered a new trial, a jury trial, in the absence of a post-trial motion, that ruling directly contradicts Section 2-1202 of the Code of Civil Procedure. Now, how did we get there? We get there because, in terms of the mandate, the mandate states that the order on appeal is hereby reversed. It's our contention that there was only one single order on appeal, and that order was the order directing a verdict. There is no other... On the informed consent issue. On the informed consent issue. Why didn't, when you saw the appellate court had issued a general mandate ordering a new trial, why didn't you file a petition for rehearing or a motion for clarification? I'm not aware that, first of all, I would have to withdraw the mandate, because the case is, once the mandate issues, it's my understanding that the appellate court has done with the case. So it is theoretically possible that I could ask the court to reclaim the mandate and explain its theory, but from what we looked at here, we looked at what is the order on appeal that was reversed. Now, under the Code of Civil Procedure, there's only one order that could possibly be before that court, and that's the order directing a verdict on the issue of informed consent. You combine that with the fact that the plaintiff explicitly abandoned any claim for a new trial as to the issue of medical negligence during the actual delivery of the child. They did that in the very first paragraph of the brief. Is your jurisdictional argument based on that there was no jurisdiction in CRIM 1 or in CRIM 2? There's no jurisdiction to address the professional negligence claim in CRIM 1. That's correct. But the appellate court had jurisdiction to say what they meant. The court issued a fairly perplexing ruling. It said, well, we never issued, we never addressed the issue of whether we could, whether they had abandoned the claim for a new trial of is that a reason? Is that a basis for issuing a ruling that lies in direct conflict with the Code of Civil Procedure? Is the fact that they did not address this in the initial appeal, is that enough? And this is what particularly bothered me. The court noted... We're kind of missing both of these questions. I think we're missing the point here. We're determined... Actually, it was asking the appellate court for clarification as to what they did in CRIM 1. That's correct. So I don't think anybody here is asking for a ruling to say... How are we going to say your clarification of what you did isn't correct? So my question is, how do we get to what I should be a new trial or not? Whether there was jurisdiction based on the fact that that wasn't part of the appeal? In fact, even a claim that they didn't care about that issue or whatever you had said. How do we get there? Get there with this. When we ask the court to clarify what it meant, there can only be one response to that. One response that can withstand scrutiny under the law. And that ruling, the claim for a new trial of the jury's verdict, was abandoned. That's what... Again, we're getting back to what you think they should have done. What they meant is something... Whether they're right or not, they're being asked to say what they were indicating. How can they even be wrong on that? We submit that they could not possibly issue any ruling. And when they say that they've clarified their instruction, my approach to this is that they were not sure. That they issued this mandate in error. And now they've refused to correct that error. I think it's also important to look at the policy reasons underlying this entire case. Post-trial motions serve a very important purpose. Foremost among those is judicial economy. Imagine how this case would have been played out had they simply issued a concise post-trial motion claiming that the issues are so intertwined that a new trial on all issues is necessary. Perhaps they might want to mention that they found that the trial court's admonition to the jury, telling the jury that they should not speculate as to the reasons why the issue of informed consent is no longer before them. They could have Is it too onerous a burden to raise those issues in the trial court and allow the trial court in the first instance to resolve those issues? And then, in the event that it's not resolved to their satisfaction, those issues would have been raised in the first appeal, litigated by both parties fully briefed and argued. As it is, it was just pushed to the claim that the issues are intertwined. They abandoned any claim of error in the fact that the claim that the trial court's admonition was overbroad. Excuse me. Did the appellate court in CRIM 1 make any pronouncement or comment with regard to one of your opening statements, and that is that the CRIMs specifically said there was no appeal from the jury verdict? No. As a matter of fact, the court was completely silent on the matter and was, I believe, in the amicus brief and as well as in the appellate's brief, they suggested that we should have filed a petition for rehearing. And upon receiving not just the mandate but the initial ruling in CRIM 1, we saw no reason to do so. We saw this as exactly what we expected, is that the issue was never before the court because they failed to file a post-trial motion. They explicitly disavowed any intent to prosecute or support a claim for a new trial on the because we wanted to ensure that the court was aware of this. We just wanted to let the court understand our position here. On the reply brief, plaintiffs made no response. They acquiesced to this. So when the court in CRIM 1 failed to address or neglected to address the abandonment of the informed consent claim, we took that as a matter of course and we believed that we had every right to rely on the code of civil procedure. We had every right to rely on laws of waiver and forfeiture. So no, we saw no reason to file a petition for rehearing. And then personally, that entire appeal focused on the 4th District's ruling in Sick Gem. I was forced to litigate that issue on a number of cases. And personally, I was very glad that they finally clarified their ruling on that. It resulted in a reversal for us, but thank God that Saint Gem has now been relegated to the dustbins of history. There is one aspect of the appellate court's ruling that I found very interesting. The court opened its analysis by stating that the scope of the trial court's proceedings on remand is to be determined for the appellate court's mandate as opposed to the appellate court's opinion. The trial court may only take such actions that are directed in the mandate and lacks authority to act beyond its dictates. Now, that statement of law comes from Supreme Court decision, which the appellate court also relied upon. They cite other Supreme Court precedent in the town of Caneville v. Meredith. This is how the Meredith decision framed it. The court said that where a court does not give specific directions on remand, quote, it must be determined from the nature of the case what further proceedings would be proper and not inconsistent with the opinion, unquote. Now, the key language there is it must be determined from the nature of the case. It's not the mandate. It's not necessarily just the appellate court's opinion. This court stated that it is from the nature of the case. The court looks at the entirety of the case, and I think that that's as it should be. This is a much more nuanced rule of law than the appellate court's citation of the PSL decision. When you look at the nature of this case, when you look at the fact that no post-trial motion was filed, when you look at the fact that they expressly abandoned their claim for a new trial, that they raised no issue in the initial appeal involving the intertwined evidence or an overbroad jury instruction, the nature of the case in this case comes to only one conclusion, and that's that the claim for a new trial on the jury issue was abandoned. When you ask how this case came to this court in terms of the parties asking the appellate court to clarify its decision, we submit that there was only one reasonable clarification it could have given, which is that we meant to say that this claim had been abandoned, and had they addressed—they pointed out we did not address the abandonment of the jury trial claim—had they done so, is it even conceivable that they could have come to any other conclusion, and that's why we believe that this case, upon remand, is limited solely to the issue presented in the directive verdict. That order granting the directive verdict is, according to the mandate, the order on appeal that was reversed. Are there no further questions? Thank you very much. Thank you. Counsel. Good morning, Your Honor. My name is David Axelrod. Counsel. I represent Collin Krim, now a 12-year-old young man with shoulder dystocia in his parents, Christopher and Frederick Krim. There are two uncontrovertible agreed facts for sure in this case. One is that there's going to be a new trial, at the very least on the informed consent issue. And the second is the parties agreed, when the motion eliminating took place in front of Judge Drummond, that there should be an interlocutory appeal for the appellate court to tell us what it meant when it issued its order reversing and remanding for a new trial without instructions. There's a long list of case law from this court that specifically provides that when you have a mandate and an order, like in this case, that provides for a new jury trial without specific instructions, it means it's a trial de novo. It's never taken place in the first place. And there's all kinds of case law that says if the error happens before the entry of the trial de novo. And that's what we argued in this case. And in fact, in the initial brief, we argued that every single order that took place after the erroneous directed verdict order should have been reversed and was reversed by the appellate court. So, Mr. Astor, you didn't make the specific argument in your appellate brief rather than saying your appeal was, you actually said, was not based on the verdict. I mean, why take the enormous risk of losing your opportunity to retry the professional negligence claim by declining the opportunity to contest the jury's verdict in the appellate court? Because the issue at the time that we were appealing was whether or not the order of respect, the direct verdict order, with respect to the informal consent, was error or not, which clearly it was. And then in our brief, and I can point to the pages in the brief that the court, like Justice Thomas, would like me to, we specifically at that point then say, because of that error, every single order that took place, including the judgment order with respect to the negligence claim, needed to be reversed as well. And I would suggest that the court look at the written house case as one example, where there were directed verdicts, and the court specifically reversed on the directed verdicts and then on the final verdicts that were entered into in that case. They were reversed as well, and the word that was used was the word taint. Once you had the erroneous order, directed verdict order, by Judge Drummond at the trial court level, everything else that happened afterwards was tainted by that order. So you have the judge telling the jurors, we're taking a big part of this case away from you. And by definition, that taints, in fact, the ability of the jury to consider that case without some prejudice, even if it's inadvertent. And the written house case specifically says, we know that it was inadvertent that there was taint, but there was still taint. So while we did not say specifically there was any error in the entry of the verdict on the negligence claim, what we did say was there was error in the directed verdict and everything that follows was erroneous as well, and we asked that everything erroneous that followed also be reversed. And it's our position that when the appellate court in CRIM 1 entered the order reversing the orders of the directed verdict and everything thereafter and ordering a new trial, that new trial required a new trial on all issues. And then instead of Mr. Unrath going to the detective appellate court and filing for a petition for a re-hearing, like is necessary under Kasichowski, or instead of filing a petition for leave to appeal before this court to argue that we should have filed a post-trial motion or to argue that we had abandoned, they had those arguments. They made those arguments in CRIM 1. It was clearly rejected because the appellate court in CRIM 1 disproved that they had to reverse and to send the case back for a whole new trial. Instead of doing what they should have done procedurally, as Kasichowski and other cases from this court have held, that when you have issues that were brought up on appeal or should have been brought up on appeal and you had the opportunity to bring it up on appeal and you didn't do so, you waived your right to make that argument anymore. And in this case, Mr. Unrath was involved. His firm was involved in CRIM 1. And at that point, when the appellate court issued the ruling reversing and requiring a whole new trial, what should have been done in order to preserve their right to proceed on these issues was either a petition for re-hearing or a petition for leave to appeal before this court. And perhaps this court would have taken the case at that time or perhaps this court would not have. I'm not in a position to say one way or the other. But at this point, now all they're doing is a collateral attack on what was previously done in CRIM 1. CRIM 2 is based on this court's rulings. They aren't allowed to do that. Further, they agreed. This is a Rule 308 appeal. It's an intraocular appeal on one question, as Justice Thomas pointed out. There's only one question here. The appellate court was asked, what did you mean? When the trial court had to make the decision as to what was meant, the trial court looked at the case law, the exact same case law I was there, and said, and understood that when you have a reversal without instructions, you have a trial to know about, as if the first trial never happened. And also understood that the reason for that, and it's in the order, is that by entering the directive verdict order, it affected the rest of the trial. So the trial judge, the judge who was present for the trial, was given the opportunity to say no, either yes or no. It didn't affect the trial, or it did. And that judge said, absolutely affected the trial. That's why it has to be a trial on all issues. But I understand that maybe there's a difference of opinion here, and I want to know specifically what the appellate court meant. And so the case went up on appeal on a question that was agreed to by the parties. Mr. Unrath and I negotiated that question to be presented before Judge Drummond and before the appellate court. And that question, in effect, was, appellate court, what do you mean? And they told us what they meant. They meant they wanted a new trial on all issues. And I would suggest, as Justice Thomas, you suggested before, with all due respect to this court, and that it's a higher court than the appellate court, you're not in a position to say what the appellate court meant when it said what it meant was wrong. You might have been in a position, if they had appealed to you after print one, to say there should have been a post-trial motion. And I would tell you there, I don't think that's the case, because under Keene, I don't think there's any obligation to a file a post-trial motion. There's nothing, Mr. Exaro, there's nothing prohibiting us from getting to the underlying issue, however. And I'd like to, if we do, I'd like to know what we do with the statement, if I may point it, while this case was tried to verdict, this appeal is not based upon the verdict of a jury. And that's what you said, in crim one. This appeal reviews the trial court's order granting a partial directed verdict in favor of the defendants on the plaintiff's theory of negligence based upon the doctrine of informed consent. Why was the informed consent issue not the only issue before the appellate court in crim one, based on the plaintiff's own statement? The answer to that is, if you go on in the brief, we were not suggesting that there was any other error, any evidentiary error, any testimony that was excluded, any other instruction that was improper with respect to the negligence claim. We were always claiming that the basis for the appeal was the lack of informed consent and the directed verdict, which was a wrongly entered. And then in section two of our brief that was submitted in crim one, we specifically indicated and asked and said that by entering the directed verdict, everything that happened after that got affected. And so we asked that everything after that got reversed. Did you file a post-trial motion with respect to the verdict? We did not file a post-trial motion, and the reason is very simple. Keene provides, and the other cases from this court provide, that there's no necessity for a post-trial motion when there's a directed verdict. Is that a directed verdict as to all issues, or is it just a directed verdict as to perhaps one? I thought Keene was just a directed verdict case. Well, in Keene, the directed verdict was as to the entire case. And isn't that true with all of the cases you've said? Do you have any authority cited that says you don't have to file a post-trial motion on an issue that was decided by a jury? This is one workplace I actually agree with Mr. Unrath, which is that issue has never been decided specifically as to whether or not there's a necessity when you have two different claims and you have a directed verdict as to one and no directed verdict as to the other. Because of the entry of the partial directed verdicts, the ultimate verdicts that took place, and this is one of the tort claims in that case, were all tainted, and as a result you had to have a reversal. The Rittenhouse did specifically talk about the directed verdict issue and whether or not there's a 2-12-2 requirement. I would suggest to this court, as I did to the Appellate Court, the distinction is this. If what we're saying is that the trial court erred by entering the directed verdict, and that was its only error, based on Keeney and the other cases that exist on the directed verdict issue on 2-12-2, there's no requirement for us to have a filing post-trial motion. On the other hand, and we then have the position that because of that error, it tainted the rest of the case, and the verdict by the jury should not have been allowed to be entered and should be reversed because the appellate court reversed it on the case. And that's exactly what the Appellate Court has found in this case, quite rightfully so. If there had been, alternatively, let's say that in the instructions, the defendant had submitted a 12-0-4 sole proxy clause instruction, and the plaintiff had objected, and there then was a verdict in favor of the defendant, and the sole proxy clause instruction was an issue for a potential post-trial motion or appeal, well then, I think that because it's a separate issue, then there is an obligation to file that post-trial motion. But in this case, based on the case law, and the Keeney case and other cases, the reason for not having to file a post-trial motion is the same as when you have a bench trial, and there's a verdict, a ruling by the court, there's no requirement of a post-trial motion because the judge, he or she, has made up his or her mind on an issue of the law, and the case goes directly to the appellate court. The same is true here. We have one issue, one ruling, that was erroneous that we believe had to be reversed, and that was a directed verdict. But because of the nature of the directed verdict in this case, it affected, tainted the rest of the trial. And as a result, and that's what, obviously, not only the trial judge said, but the appellate court said. Would you agree that if that's your theory, that you should have filed a post-trial motion espousing that theory? No, I would not agree with that, obviously. I didn't think you would. But isn't that a point, a possible point, if you'd foreseen where we are now, a post-trial motion clearly would have avoided all of this. Well, a post-trial motion, I think, would have been, unfortunately, a waste of time in this particular case. And so, being up here now, with Trim 1 and Trim 2, and having to come back, it's taken a lot more time. We should have been here now, with all due respect, in Trim 2, because these issues should have been raised before you, based on Kasabowski and Trim 1. But that presupposes that when it was sent back, it was clear that you were getting a mild no vote. However, apparently, with getting the survey question here, more people than, more persons than one thought it was not clear what the appellate court said. Well, apparently, Judge Drummond came to the conclusion as to what he thought the appellate court should do. He agreed, for judicial efficiency and economy, that we should find out what the appellate court meant. The appellate court agreed with us as to what the law says, which is, when there is an instruction for a new trial after a reversal, it's a new trial at de novo, as if the first trial never happened. So, presumably, let's say that, I won't agree to this, but hypothetically, we abandon the argument. I don't think we did, or that there's a requirement for a post-trial motion. Once the appellate court says it's a trial at de novo, it's as if that first trial never took place. Whatever errors took place in that first trial, in fact, this court has ruled that when you have a reversal and a remand like that, a plaintiff can even amend a complaint, can raise new claims that hadn't been raised previously, so long as you don't have special limitations or relation to that kind of doctrine problems. You can still raise new causes of action when there's been a reversal and a remand after a jury trial. Otherwise, there would be no ability to amend a complaint under those circumstances. So, the appellate court didn't use the language trial de novo. It used some language, I think, that said it was sending it back for a trial in accordance with the disorder or the directions of the disorder. It did not specifically use the term trial de novo. I only use that because that's what the case law says, is when there's a reversal with a remand for a new trial, the cases specifically, including from this court, say that calls for a trial de novo. And that's why the question that was agreed to by Mr. Unrath and I was the 308 question, was there supposed to be a trial de novo on all issues? And the appellate court said, absolutely, there should be a trial de novo on all issues. So, on the underlying issues, we don't think we abandoned anything with respect to the disorder. All the point that was being made was the error we were noting was the error in the entry of the directive verdict. Not suggesting that that didn't mean that the rest of the orders that took place in the rest of the trial shouldn't be reversed. And that's why there's Section 2 of our brief, which I believe is at page 28 of our initial brief at CRIM 1, specifically setting forth that because of the error and the entry of the directive verdict, every order that took place after that should be reversed as well. And ultimately, that's what the appellate court decided. With respect to the post-trial motion, there's no obligation under Keene to abide by the post-trial motion. The sole issue is one that does not require a post-trial motion, and that's why a post-trial motion wasn't necessitated. But, in all honesty, I don't think this court needs to get into those issues at all. Because what's happening here is a collateral attack on CRIM 1. The opportunity existed at that time under Keselowski and Kreitzer and other cases for the defendant to file and argue in a post-trial, in a petition for relief to appeal to this court at that time that there should have been a post-trial motion or that there was abandonment. And they failed to do so. So their argument that we abandoned or failed to do something was waived the moment that instead of filing a petition for rehearing or a petition for relief to appeal before this court, they went back to the trial court. And for Mr. Unger to say, well, we, it was our understanding that only to be as the one issue, then they wouldn't even have to file a motion eliminating. The question would have been totally appropriate for them to bring it before the appellate court and say, what do you mean? Whether it's a petition for rehearing or a motion for clarification. They failed to do so. The minute they did that, they lost jurisdiction. We would ask that the appellate court's decision be affirmed and that the case be set back for retrial on all issues. Thank you very much. Thank you. Reply. Very briefly, opposing counsel opened his argument by noting that the general rule, general mandate results in a trial de novo. I believe that rule has been in existence for nearly 100 years. I have no problem with that. I think that that's good law and I think that this court has reaffirmed it. However, it is a general rule. It does not apply under the circumstances of this case. I believe this general rule advances quite well. Right up to the point that it comes into conflict with the Code of Civil Procedure. Right now, in this case, the two cannot be squared. Counsel also discussed the certified question. The certified question was, put simply, what did you mean in CRIM 1? What did you mean? I think that the court never addressed it. The court didn't have any meaning. The court never approached the issue, and it admitted that in its ruling, that it never addressed it. So, in a sense, in CRIM 2, it is addressing it for the very first time. Now, the court relied on its mandate. There's a sense that the appellate court is saying, if we had addressed it, we would not have issued a general mandate. But we did, and there's nothing we can do about it. We're handcuffed. We are prisoners of inertia here. We've issued a general mandate, and it's all done. That is not the law. We can't find that a mistaken ruling can somehow be used to preempt the Code of Civil Procedure. Plaintiffs suggest that the belief into this case may have been improvidently granted, the petition in this case. And I think I close my argument with the notion that there is a bit of a conflict in the law on how general mandates are interpreted. Under the PSL cases that the appellate court relied on, trial courts have no discretion. They just have to look at the ruling and follow the instructions. If there are no instructions, you look to the mandate. Then you look at the town of Caneville, the Meredith decision. It says, no, there's no specific instructions. You have to look at the nature of the case. Look at what happened in this case. And when you do that, you're going to find that there was no post-trial motion filed in violation of Section 2-1202 of the Code of Civil Procedure. There's an explicit abandonment of the issue in the initial appeal. That's what happens when you take into account the nature of the case. I would also take issue with the opposing counsel's contention that they raised the issue of the intertwined evidence in their initial brief. I can't find that anywhere in there. I can find nothing in CRIM 1, in any of their briefing, even suggesting or hinting that a new trial should be held as to the jury's verdict. To the contrary, all you need to do is look at their conclusion, their prayer for relief. They never asked for a new trial on that issue, which was in accordance with their introductory statement of the brief. In the end, this Court has an opportunity here to clarify the law as to how our courts should view general mandates upon remand. I think this Court has an opportunity to reaffirm basic principles underlying the purpose of a post-trial motion. I think this Court has to look at this in terms of basic fairness. Where a plaintiff claims that there was intertwined evidence, wouldn't it have been great if we had been given an opportunity to litigate that issue in the trial court and in the first appeal? Thank you very much. Thank you. Case number 124318, CRIM v. Dietrich, will be taken under advisement as agenda number 11. Mr. Unruh, Rath, Mr. Axelrod, we thank you for your arguments today. You are excused.